UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |  |
|---|---|---|
| BETTY L. GARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 5:18-cv-221-JMH-EBA |
| v. | ) | |
| | ) | |
| MEGAN J. BRENNAN, | ) | **MEMORANDUM OPINION** |
| Postmaster General, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment [DE 14]. Having considered the matter fully, and being otherwise sufficiently advised, Defendants' Motion [DE 14] will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Betty L. Garrett is currently employed as Lead Sales and Service Associate at the United States Postal Service ("USPS") in Versailles, Kentucky, where she has worked since 1993. [DE 14-1 at 3; DE 17 at 2]. On March 7, 2014 and March 20, 2014, Garrett participated in Pre-Disciplinary Interviews ("PDI") stemming from four incidents beginning approximately a month earlier. [DE 14-1 at 3]. In addition to Garrett, two other people were present during both PDIs, Union Representative Randy Bradley and Supervisor Kirby

Brown. [*Id.*]. Garrett acknowledges the occurrence of these incidents, but claims she was disciplined instead because of her race, age, sex, and prior EEO activity. [DE 17 at 2].

The first incident occurred on February 10, 2014, when Garrett had a confrontation with an eighty-year-old customer at the front window of the Versailles Post Office [*Id.* at 4]. During a verbal confrontation with the customer, Garrett called the police without first notifying USPS management. [*Id.*]. One of her supervisors, Postmaster Diedre Shrout, was talking to the customer when the police arrived and says she did not know why the police had been called until they asked the customer to leave. [DE 14-1 at 4]. After the incident, Shrout informed Garrett she was never to call the police without the permission of the supervisor or Postmaster. [*Id.* at 5]. Postal management did not send Garrett home or write her up for this incident. [*Id.*]. Garrett does not dispute the facts of this incident occurring, just that she does not believe it is a reason for the disciplinary action she would eventually receive. [*See* DE 17].

The second incident occurred on March 6, 2014, when Garrett's other supervisor, Kirby Brown, found a tub of outgoing mail on the workroom floor for which Garrett was responsible. [DE 14-1 at 5]. Garrett was the close-out clerk for that day, and one of her duties was to complete reports regarding outgoing mail and to ensure all mail was dispatched. [*Id.*]. During the PDI, Garrett admitted she

2

did her report too early on March 6, 2014, and the mail "wasn't in the correct place." [*Id.*]. Another clerk was present at the time, but was not assigned close-out clerk as Garrett was. [DE 18 at 9].

On March 12, 2014, Garrett made a comment about the Catholic faith to a customer in front of another coworker who was of the Catholic faith. [DE 14-1 at 5]. The coworker informed USPS management about the comments made by Garrett and stated that it made her feel extremely uncomfortable. [*Id.*]. When this incident was discussed at Garrett's PDI on March 20, 2014, Bradley informed her that this dialogue was inappropriate for the workplace and not allowed. [*Id.* at 6]. Garrett does not dispute that she made the inappropriate comments, but instead maintains that what she said could not be considered offensive to anyone. [DE 18 at 9].

The final incident also occurred on March 12, 2014. Following a transaction with a customer, Garrett and Shrout had a discussion because Shrout believed that Garrett had not properly cleared out the transaction. [DE 14-1 at 6]. During the confrontation, Shrout felt she could not communicate instructions to Garrett without feeling threatened. [DE 18 at 9]. During the discussion, Garrett told Shrout that "you cannot look at me like this" and "you're barring your teeth," which Shrout interpreted as confrontational. [DE 14-1 at 6]. Garrett was eventually sent home, and later received notice that she was placed on emergency off-duty placement. [*Id.*].

Following the March PDIs, Garrett received a 14-day
suspension dated April 19, 2014, and issued April 21, 2014. [DE
14-1 at 7]. USPS charged Garrett with improper conduct and failure
to follow instructions, citing a violation of the *Employee and
Labor Relations Manual* § 666.15, which required employees to obey
supervisor's instructions. [*Id.*; DE 18 at 9]. The disciplinary
actions were said to be based on the four aforementioned incidents.
[*Id.*].

On April 10, 2018, Garrett filed this action against
Defendants Megan Brennan, in her official capacity as Postmaster
General of the United States; Jeff Sessions, then-Attorney General
of the United States; and Robert M. Duncan, Jr., then-United States
Attorney for the Eastern District of Kentucky. [DE 1]. In her
Complaint, Garrett alleges employment discrimination in violation
of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2002e,
*et seq*, and the Age Discrimination in Employment Act ("ADEA"), 29
U.S.C. § 633(a). [*Id.* at 2-4]. Specifically, Garrett asserts that
she was discriminated and retaliated against based on her race,
sex, and age when she was "placed on Emergency Placement-Off Duty
Status and on March 7 and 20, 2014, she was subjected to [PDIs]
with a 14 day suspension . . .". [*Id.* at 3].

On December 16, 2019, Defendant Brennan filed the instant
Motion for Judgment on the Pleadings, or in the Alternative, Motion

4

for Summary Judgment [DE 14], which will be discussed further herein.

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings requires the same "'standard of review employed for a motion to dismiss under Rule 12(b)(6).'" *Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 999 (6th Cir. 2015) (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)). "After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under such a motion, "'all well pleading material allegations of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Tucker*, 539 F.3d at 549) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). However, the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Winget*, 510 F.3d at 581-82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker*, 539 F.3d at 549 (quoting *Winget*, 510 F.3d at 582). "[W]hen determining whether a plaintiff is entitled to judgment on the pleadings, such a judgment may be based on admissions by the Defendant under Fed. R. Civ. P. 8(b)." *Finisar Corp. v. Cheetah*

5

*Omni, LLC*, No. 11-CV-15625, 2012 WL 6949236, at *1 (E.D. Mich. Dec. 10, 2012) (internal citations omitted).

Alternatively, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated another way, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pennington,* 553 F.3d at 450 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

6

The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Pennington v. State Farm Mut. Automobile Ins. Co.,* 553 F.3d 447, 450 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

## III. DISCUSSION

Defendant moves for judgment on the pleadings, or alternatively, for summary judgment, asking the Court to dismiss Garrett's action in its entirety. [DE 14]. Defendant argues that summary judgment is appropriate because Garrett has not sufficiently plead her case by failing to establish either direct evidence or a prima facie case of discrimination. [DE 14-1 at 3]. Defendant also contends that Garrett fails to demonstrate that the reason given for her 14-day suspension was pretextual. [*Id.*]. The merits of Garrett's claims will be discussed in turn.

### A. Discrimination Claims

Garrett alleges that Defendant discriminated against her based on her race, sex, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2002e, *et seq*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633(a). Title VII of the Civil Rights Act of 1964 prohibits, *inter alia*, employment discrimination or harassment on the basis of race and sex. 42 U.S.C. §§ 2002e, *et seq*. Similarly, the ADEA provides that it is "unlawful for an employer . . . [to] discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under both statutes, Garrett bears the ultimate burden of persuading the fact-finder that Defendant discriminated against them. *Brewer v. New Era, Inc.*, 564 F. App'x 834, 838 (6th Cir. 2014); *Reeves v. Sanders Plumbing Prods., Inc.*, 530 U.S. 133,

143 (2000). This may be done by introducing direct evidence that shows Defendant was motivated by discriminatory intent, or by indirect or circumstantial evidence that supports an inference of discrimination. *Id.*; *see also Logan v. Denny's, Inc.*, 259 F.3d 588, 566-67 (6th Cir. 2001).

1.   **Direct Evidence**

Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). In the context of discrimination, direct evidence is that which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Brewer*, 564 F. App'x at 838; *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000). "[T]he evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [gender, age, or race], but also that the employer acted on that predisposition." *Craig v. Continental Pet Technologies, Inc.*, No. 04-248-DLB, 2006 WL 2792337, at *5 (E.D. Ky. 2006) (*citing Hein v. All America Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000)). When a claim of discrimination is established through direct evidence, the burden then shifts to the employer to "prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Brewer*, 564 F. App'x at 838-39 (internal citations omitted).

9

Garrett asserts that there is direct evidence of Defendant's discriminatory actions. [DE 17 at 4-9]. First, Garrett points to a comment made during her employment at USPS as direct evidence of discrimination and that the disciplinary actions taken against her were invalid. [*Id.* at 6-7]. According to Garrett, Postmaster Shrout previously made remarks about Garrett's age and race which Garrett found to be offensive. [*Id.*]. However, Garrett only cites to one comment, in which Shrout said, "Betty, everything we do is not against you because you're black." [*Id.* at 8; DE 14-2 at 142].

It is well-established that isolated and ambiguous statements are not sufficient to make out a direct evidence case of employment discrimination. *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 382 (6th Cir. 2002); *see also Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (store manager's comments that assigning African American employee to the store would hurt its business did not constitute direct evidence of discrimination); *Golden v. Mirabile Investment Corp.*, 724 F. App'x 441, 446-47 (6t Cir. 2018) (district manager's statements that a female manager was paid more because she needed extra money and had children was not direct evidence that a male employee was terminated based on gender; inference was required). Here, even if the statement was believed, it does not compel the conclusion that Garrett's discipline was the result of age, sex, or race discrimination without some type of inference. Aside from this comment, Garrett does not cite any

10

other incidents or comments that directly implicate race, age, gender, or prior EEO activities. Moreover, though Garrett states in her deposition that similar comments were made several times, there is no indication of when they were made or whether they directly related to her discipline. [DE 14-2 at 141-42].

Garrett also contends that a litany of other allegations are "direct" evidence of discrimination. She argues that because no policy prohibits contacting the police at work, her discipline for doing so is discriminatory. [DE 17 at 6]. Garrett further argues that no evidence exists to show that she threatened her supervisor, and as such, any suggestion otherwise is "direct" evidence of discrimination. [*Id.* at 7-8]. Ultimately, Garrett fails to demonstrate direct evidence that the disciplinary actions she received were discriminatory. Even if these things were all true, they do not constitute direct evidence. Instead, Garrett's contentions are circumstantial and require a *McDonnell Douglas* analysis.

### 2.   Circumstantial Evidence

In the absence of direct evidence of discrimination, courts follow the familiar *McDonnell Douglas* rubric, placing the initial burden on the plaintiff to establish a prima facie case of discrimination. *Brewer v. New Era, Inc.*, 564 F. App'x 834, 838 (6th Cir. 2014); *McDonnell Douglas v. Green*, 411 U.S. 792, 802-07 (1973). If the plaintiff successfully establishes a prima facie

11

case of discrimination, the burden shifts to the employer to articulate a "'legitimate, nondiscriminatory reason'" for its actions." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (citing *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001)). Once a legitimate reason is provided, the burden shifts back to the plaintiff to prove by a preponderance of evidence that the reasons offered were a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804; *see also Arendale*, 519 F.3d at 603.

To establish a prima facie case of race discrimination under a disparate treatment theory, plaintiff must show that: (1) she is a member of a protected class, (2) she was qualified for her job and performed it satisfactorily, (3) despite her qualifications and performance, she suffered an adverse employment action, and (4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside her protected class. *Turner v. Marathon Petroleum Co. LP*, No. 18-15-HRW, 2019 WL 2517775, at *4 (E.D. Ky. June 17, 2019) (citing *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 957 (6th Cir. 2014)). Here, the parties do not appear to dispute that Garrett is a member of a protected class or that she is qualified for the position. Thus, the dispute turns on whether Garrett suffered an adverse employment action, and whether she was treated less favorably than other similarly situated employees.

12

First, Defendant contends that Garrett cannot demonstrate that she suffered an adverse employment action. [DE 14-1 at 13]. Specifically, Defendant argues that neither the PDIs nor paid suspension and emergency off-duty placement constitute adverse employment actions. [DE 14-1 at 13-15]. Though Plaintiff briefly discussed the adverse employment action element, she failed to substantively respond to any of Defendant's arguments. Nevertheless, the Court will consider the facts presented.

Generally, the Sixth Circuit defines "materially adverse" employment action as:

> a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Such a change must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidence by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) (internal citations omitted).

"[A] suspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action." *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 89, 803 (6th Cir. 2004)). In *Bowman v. Shawnee State University*, the Sixth Circuit held that the temporary removal of

13

a university professor from his position did not rise to the level of an adverse employment action because the removal was only for ten days and the professor retained his position and income. 220 F.3d 456, 461-62 (6th Cir. 2000). On the other hand, a suspension without pay *may* constitute an adverse employment action, even where backpay is granted. In *White v. Burlington N. & Santa Fe Ry. Co.*, for example, the Court held that a thirty-seven-day suspension without pay constituted an adverse employment action, even though the employer eventually reversed the decision and gave the plaintiff back pay. 364 F.3d at 802. "This is so in part because an employee's loss of the use of his or her wages even for a time can be a harm, and because it may require more than simply backpay to make a plaintiff whole from the injuries caused by an unlawful act of employment discrimination." *See Garren v. CVS Rx Services, Inc.*, 482 F. Supp.3d 705, 722 (E.D. Tenn. 2020); see also *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-25 (2nd Cir. 2001).

Here, although Plaintiff fails to make any substantive arguments beyond repeating the allegations that she suffered an adverse employment action, the evidence appears to demonstrate an issue of material fact. In fact, Defendant concedes that Plaintiff did not receive pay while on Emergency Placement. [DE 14-1 at 14; DE 14-6]. However, Defendant contends that Garrett eventually did receive backpay. Nevertheless, as described above, even a

14

temporary loss of wages can be injury enough to satisfy the element
of *McDonnell Douglas*. *See Garren*, 482 F. Supp. 3d at 722; *see also
Raynor v. Brennan*, No. 4:19CV00064JM, 2020 WL 5529616, at \*3-4
(E.D. Ark. Aug. 27, 2020) (finding whether off-duty placement
during an investigation without pay is an "adverse employment
action" is a genuine issue of material fact). Given the facts here,
the Court finds there is a genuine issue of fact as to whether
Plaintiff's 14-day suspension was an adverse employment action.

Notwithstanding, Defendant maintains that Garrett has failed
to establish that she received differential treatment compared to
similarly situated employees. [DE 14-1 at 16]. In the context of
differential disciplinary action cases, three factors are relevant
in determining whether employees are "similarly situated":

> To be deemed "similarly-situated," the individuals with whom
> the plaintiff seeks to compare his/her treatment must have
> (1) dealt with the same supervisor, (2) have been subject to
> the same standards and (3) have engaged in the same conduct
> without such differentiating or mitigating circumstances that
> would distinguish their conduct or the employer's treatment
> of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).
Fundamental to this comparator analysis is that Garrett and other
employees are similarly situated in "all relevant aspects."
*Turner*, 2019 WL 2517775, at \*6; *Ercegovich v. Goodyear Tire &
Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998).

Here, Garrett has failed to identify any similarly-situated
employees who were treated differently for disciplinary actions

15

comparable to her own. In her complaint, Garrett alleged that "[e]mployees of a different race and/or sex and/or age and/or those who had not engaged in prior EEO activity, similarly situated to Plaintiff were given better treatment than Plaintiff under same or similar circumstances." [DE 1 at 3]. In her response to Defendant's motion for summary judgment, Garret simply states that "the attached exhibits demonstrate what discipline other employees were given for similar offenses." Yet, Garrett provides no names of employees, nor does she describe incidents of unequal treatment that would provide evidence to establish a prima facie case of discrimination.

Similarly, as Defendant points out, Garrett also failed to provide any similarly-situated employees who were treated differently than her in her EEO investigative affidavit; nor was she able to point out any comparators during her deposition. [DE 18 at 6; DE 17-4 at 4-6, 8; and DE 14-2 at 186-87]. Ultimately, the failure to present sufficient evidence established that "non-protected employees were treated more favorably after engaging in the same or similar conduct" causes an employment discrimination or retaliation claim to fail. *French v. Henderson*, 4 F. App'x 257, 258 (6th Cir. 2001). Thus, Garrett's inability to identify any comparators causes her to fall short of the threshold required under a prima facie case of discrimination.

Even if Garrett had established a prima facie case of discrimination, Defendant has put forth legitimate and nondiscriminatory reasons for the placing Garrett on off-duty status and her eventual suspension. That is, Defendant explains that these disciplinary actions were the result of Garrett's workplace conduct and the four incidents in February and March 2014.

As a result, the burden shifts back to Garrett to show the reasons given are pretext for discrimination. Garrett can refute the legitimate, nondiscriminatory reasons articulated by Defendant through a showing that the proffered reason "(1) has no basis in fact, (2) did not actually motivate the action, or (3) was insufficient to warrant the action." *Hostettler v. College of Wooster*, 895 F.3d 844, 858 (6th Cir. 2018) (quoting *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 431 (6th Cir. 2014)); *see also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). Essentially, the proffered reason cannot be proved to be a pretext "unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

Moreover, if the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made decision, the plaintiff will fail to

17

establish the basis for the decision was pretextual. *Revennaugh v. United States Postal Service*, No. 2:16-cv-783, 2:17-cv-879, 2019 WL 4674250, at *12 (S.D. Ohio Sept. 25, 2019) (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)). "In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424 (6th Cir. 2007) (quoting *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998)).

Garrett does not dispute USPS's documented instances of unsatisfactory behavior—the four incidents involving Garrett from February 10, 2014 through March 12, 2014. Instead, Garrett alleges the reasons put forth by USPS for her disciplinary actions were pretextual because she believes that the PDIs, emergency placement, and 14-day suspension were not justified responses to the workplace conduct. Garrett claims the actions taken against her "demonstrated animosity toward [her] by piling on charges against her and by trying to use charges against her for which there was no basis." [*See* DE 17 at 8]. Ultimately, however, Garrett offers no specific evidence to refute Defendant's good-faith concerns about her workplace conduct.

18

"To show that the proposed reason was merely pretext, the plaintiff must provide more than mere speculation." *Hagan v. Warner/Elektra/Atl. Corp.*, 92 F. App'x 264, 268 (6th Cir. 2004). "Courts have repeatedly held that the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment." *Mitchell v. Toledo Hosp.*, 964 F.2d at 585. Here, based on the facts offered, no reasonable juror could conclude that that USPS's concerns about Garrett's conduct and her ultimate suspension were pretext for discrimination.

### B. Retaliation Claim

Although under the same Count as the other allegations in the Complaint, Garrett also alleges that Defendant retaliated against her because of past EEO complaints. [DE 1 at 3]. In order to establish a prima facie case of retaliation, Garrett must show that: (1) she engaged in protected activity; (2) the employer had knowledge of the protected activity; (3) she suffered an adverse employment actions; and (4) a causal connection exists between the protected activity and the adverse employment action. *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 713 (6th Cir. 2007).

Here, Garrett has not only failed to respond to Defendant's arguments, but her Complaint is quite bare. Garrett never explains whether her employers had knowledge of her EEO activity, nor does

19

she demonstrate any causal connection between such activities and her ultimate placement on off-duty status and 14-day suspension. Garrett simply alleges that she filed an EEO complaint and suffered "retaliation for prior EEO activity." [DE 1 at 3].

In her deposition, Garrett alleged that in 2010 she filed an EEO complaint after an altercation with a past supervisor in which she was written up and given a two-week suspension. [DE 14-1 at 18]. Garrett asserts she had inquired with her current supervisor, Postmaster Shrout, as to whether any discipline or information about that past incidents remained on her record [*Id.*]. Shrout informed her there was no information of the past incident on Garrett's record. [*Id.*]. In their sworn affidavits, both Postmaster Shrout, and Supervisor Kirby Brown deny any knowledge of Garrett's prior EEO activity at the time of the actions at issue in the instant case, and neither were working in the Versailles Post Office with Garrett in 2010 when the alleged prior EEO activity took place. [DE at 19; DE 14-4 at 212; DE 14-3 at 194]. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275,288 (6th Cir. 2012) (plaintiff failed to establish the second element of a prima facie case of retaliation – the defendants' knowledge of the protected activity); *Hopkins v. Canton City Bd. Of Educ.*, 477 F. App'x 349, 361 (6th Cir. 2012) ("Hiring decisionmakers cannot 'retaliate' when unaware of the supposed triggered act."). Thomas Adkins, The Post Office Operations Manager, did aver that he knew

20

Garrett "has had EEO cases in the past," he also stated that he did not remember the case. [DE 18 at 7]. Garrett speculates that Adkins told Shrout about her prior EEO activity but admits "There's no way I would know specifically." [DE 14-1 at 19]. Garrett's retaliation claim fails because she did not provide any evidence that the disciplinary action she received was motivated by retaliatory intent, or that her supervisors knew of the prior EEO activity and thus her prima facie case of retaliation fails.

Moreover, even assuming the relevant people had knowledge of Garrett's prior EEO activities, the temporal connection is simply not there. "A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action that may create an inference of causation." *Eckerman v. Tenn Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010). Here, however, Garrett maintains that Defendant retaliated against her in 2013 and 2014 because of EEO activities that occurred several years prior, between 2008 and 2010. Without something more, Garrett's retaliation claim also fails based on the fourth element. *See Miller v. City of Canton*, 319 F. App'x 411, 421-22 (6t Cir. 2009) ("Where the protected activity and allegedly retaliatory action are separated by six months, however, more than temporal proximity must be show to establish a causal connection.") (internal citations omitted).

Ultimately, the Court is not obligated to construct arguments for the parties, and Garrett has the burden of proof to point out specific facts or evidence in dispute. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087-88 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6t Cir. 1992); *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) ("conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment."). Given the facts presented, Garrett is unable to make a prima facie case for retaliation because she fails to put forth evidence that her supervisors knew of her prior EEO activity and therefore is unable to show causal connection between such activities and her ultimate placement on off-duty status and 14-day suspension. Thus, the Court finds that Defendant is entitled to summary judgment on Garrett's retaliation claim as well.

## IV. CONCLUSION

For all the reasons set forth above, each of Garrett's claims fail as a matter of law and shall be dismissed. Accordingly, **IT IS ORDERED** as follows:

(1)   Defendants' Motion for Judgment on the Pleadings, or in the Alternative Motion for Summary Judgment [DE 14] is **GRANTED;**

(2)   This matter is **DISMISSED WITH PREJUDICE;**

(3)   Because this matter is dismissed, Garrett's Motion for Status Conference [DE 21] is **DENIED AS MOOT;** and

(4)   This is a final and appealable order.

This the 20th day of April, 2021.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge